UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TREVOR MURRAY,

                       Plaintiff,

          - against -

UBS SECURITIES, LLC and UBS AG,

                       Defendants.
------------------------------------------------------------------X

**JUDGE FURMAN**

12 CV 5914

**COMPLAINT**

**JURY DEMANDED**

Plaintiff Trevor Murray ("Plaintiff"), by his attorneys, Broach & Stulberg, LLP, respectfully alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff is a former Senior CMBS (Commercial Mortgage-Backed Security) Strategist at Defendant UBS Securities LLC ("UBS Securities"). For the reasons set forth below, Plaintiff brings this action because Defendants illegally retaliated against Plaintiff for making disclosures that are protected under Section 806 of the Sarbanes Oxley Act of 2002 ("Sarbanes Oxley Act") (18 U.S.C. § 1514A), thereby violating the Dodd-Frank Act of 2010 ("Dodd-Frank Act")(15 U.S.C. § 78u-6(h)). Specifically, Plaintiff was terminated for exercising his legally-protected rights to inform his supervisors about, and refuse to participate in, conduct that he reasonably believed violated laws and rules designed to protect consumers from fraudulent practices in connection with the sale of securities.[1]

---

[1] On August 2, 2012, Plaintiff submitted a Complaint to the United States Department of Labor, charging that Defendants' termination of Plaintiff also violated 18 U.S.C. § 1514A and 12 U.S.C. § 5567. If no decision is reached on Plaintiff's claims under 18 U.S.C. § 1514A within 180 days, and under 12 U.S.C. § 5567 within 210 days, Plaintiff will seek to amend the instant Complaint to include these claims, pursuant to 18 U.S.C. § 1514A(b)(1)(B) and 12 U.S.C. § 5567(c)(4)(D)(i).

2. As a Senior CMBS Strategist for UBS Securities, Plaintiff was responsible for performing research and creating reports about CMBS products that were distributed to Defendants' current and potential clients, and in which UBS Securities held trading positions. Plaintiff was the target of a concerted effort by members of UBS Securities involved in CMBS trading and commercial mortgage origination to skew his research to appear more favorable to those UBS Securities CMBS products and trading positions. Plaintiff refused to produce any report that was inconsistent with his own research, and, on several occasions, complained to his supervisors at UBS Securities that he was being pressured to produce misleading reports. Defendants did not take any corrective action in response to his complaints, but instead, approximately one month after his most recent complaint, terminated his employment. Plaintiff seeks all appropriate relief stemming from Defendants' retaliatory termination of his employment.

## JURISDICTION AND VENUE

3. Jurisdiction of this Court over Plaintiff's claims is invoked pursuant to 15 U.S.C. § 78u-6(h)(1)(B)(i) and 28 USC § 1331.

4. Venue is proper within this district, pursuant to 28 U.S.C. 1391(b)(2), in that "a substantial part of the events or omissions giving rise to the claim occurred" in New York, New York.

## PARTIES

5. Plaintiff Trevor Murray is a former employee of UBS Securities. He worked for UBS Securities from approximately May 2007 to September 2009 and from approximately May 2011 to on or about February 6, 2012. Plaintiff worked for UBS Securities primarily at its office located at 1285 Avenue of the Americas, New York, New York. One to one-half days per week,

Plaintiff worked at UBS Securities' office in Stamford, Connecticut. Plaintiff resides in, Brooklyn, New York.

6. Defendant UBS AG is a Switzerland corporation that conducts business in New York, New York and has offices in New York, New York. Upon information and belief, UBS AG is required to file reports with the United States Securities and Exchange Commission ("SEC") under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. § 78o (d)). Upon information and belief, UBS AG has a class of securities that must be registered pursuant to section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l).

7. Defendant UBS Securities is a Delaware corporation and a wholly owned subsidiary of UBS AG. UBS Securities maintains an office in New York, New York and conducts business in New York as a foreign limited liability company. UBS Securities is registered with SEC as a broker-dealer. Upon information and belief, UBS Securities has a class of securities that must be registered pursuant to section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l).

## STATEMENT OF FACTS

8. Plaintiff was originally employed by UBS Securities as a Director from approximately May 2007 to approximately September 2009 in the Mortgage Strategy Group and then, beginning in late 2008, in the Special Assets Group (" StabFund" ). In or around September 2009, Plaintiff was laid-off from UBS Securities.

9. In or around October 2009, Plaintiff joined CapRok Capital LLC ("CapRok") as a Managing Director and Commercial Mortgage-Backed Security ("CMBS") strategist and trader.

10. In or around early 2011, UBS Securities solicited Plaintiff to return. Senior employees of UBS Securities assured Plaintiff that that the company was fully committed to the

CMBS business, and that Plaintiff would be an integral member of that business as it grew in the coming years. In particular, persons recruiting Plaintiff to return to UBS Securities pointed to the concurrent hiring of Ken Cohen, formerly of Lehman Brothers, and most of his former team to run UBS Securities' CMBS trading and commercial mortgage originations.

11. On or about April 26, 2011, Plaintiff received a formal offer letter from UBS Securities. In or around May, 2011, Plaintiff resigned his position at CapRok and re-joined UBS Securities as a Senior CMBS Strategist and Executive Director (a position more senior than his previous position with UBS). Plaintiff's starting base salary was $250,000. He was repeatedly advised in advance by agents of UBS Securities that his incentive compensation would very likely range from approximately three-quarters of his base salary in difficult years to twice his base salary in strong, profitable years. Plaintiff was to receive benefits commensurate with those normally provided to an employee of his senior status.

12. In his new position at UBS Securities, Plaintiff was responsible for performing research and creating reports about UBS Securities' CMBS products that were distributed to UBS's current and potential clients. After re-joining UBS Securities, Plaintiff received nothing but positive reviews, and was never reprimanded, officially or unofficially, for any disciplinary or job-related issue whatsoever.

13. Plaintiff was, however, the target of a concerted, extended effort by UBS Securities, through Mr. Cohen, as well as others reporting to Mr. Cohen, to influence Plaintiff to skew his published research in ways designed to support UBS Securities' ongoing CMBS trading and loan origination activities.

14. In June 2011 Mr. Cohen implored Plaintiff, in words or effect, to help "improve conditions in the CMBS market" because this was to be a "significant revenue generator" for the

investment bank at UBS Securities. In or around September 2011, Mr. Cohen, along with the head CMBS trader, sat directly next to Plaintiff and told him that a person from the market had approached Mr. Cohen about Plaintiff's research. Mr. Cohen stated that he disagreed with Plaintiff's research, and asked Plaintiff, so as not to "confuse" the market, to inform the head CMBS trader about his research ideas prior to publication in order to maintain "consistency" between what he and they were saying about UBS Securities' CMBS products and trading positions.

15. On one occasion after the meeting in or around September 2011, Plaintiff spoke with David McNamara, the head CMBS trader, and Jamarr Delaney, another CMBS trader, about his view that certain CMBS bonds were overvalued. Mr. Delaney and Mr. McNamara told him not to publish anything negative about those bonds because the trading desk had just purchased them. In or around December 2011, after Plaintiff published his 2012 CMBS outlook article, Mr. Cohen stopped Plaintiff in the hallway and admonished him for publishing an article that Mr. Cohen found "too bearish."

16. In or around January 2012, Mr. Cohen told Plaintiff that UBS Securities would be coming to market likely sometime in the first half of 2012 with an asset securitization for a loan on a Miami hotel. Plaintiff expressed concern about the outlook in the hotel sector, but Mr. Cohen directed him not to publish anything negative about the hotel sector because of UBS Securities' exposure. Despite the pressure placed on Plaintiff to skew his research to be more favorable to UBS Securities, he did not publish any report that was inconsistent with his own research.

17. In or around January 2012, Plaintiff learned from junior members of the CMBS trading desk that Mr. Cohen and his team had arranged a long series of important client meetings

in connection with a high-profile commercial mortgage conference in Miami. Even though Plaintiff was the lead CMBS strategist for UBS Securities and the author of UBS Securities' research for precisely such clients, he was neither invited to these meetings nor informed about them in advance. Instead, Plaintiff attended unannounced. At those meetings, Plaintiff heard Mr. Cohen relate to those current and prospective clients assessments about the commercial mortgage and CMBS markets that Mr. Cohen knew to be inconsistent with Plaintiff's assessments, and in a manner that portrayed Mr. Cohen's assessments as if they were those of the firm as a whole.

18. Plaintiff repeatedly told his superiors at UBS Securities about these egregiously improper attempts to influence his published research. In or around December 2011 and in or around January 2012, Plaintiff told his manager, Mike Schumacher, about Mr. Cohen's and his team's negative response to his research, including his comment that Plaintiff's published articles were "too bearish" and "off message" with the strategy of the trading desk and overall commercial mortgage group. In or around January 2012, Plaintiff told Jeff Ho, a Managing Director at UBS Securities, that Mr. Cohen only interacted with Plaintiff to criticize his research and attempt to manipulate his reports. In his meetings with Mr. Schumacher and Mr. Ho, Plaintiff gave examples about how Mr. Cohen and members of his team had excluded him from meetings, and pressured him to skew his research, but Mr. Schumacher and Mr. Ho did not respond. At no point did anyone at UBS Securities take any action to stop the interference with Plaintiff's research.

19. When Plaintiff made each of the complaints referenced in paragraph 18 above, he reasonably believed that he was being pressured to produce ostensibly objective research reports about its securities products that were, by commission or omission, false or misleading, and

intended to favor UBS Securities' products and trading positions, in violation of federal laws relating to fraud against shareholders, including, but not limited to, SEC Rule 10b-5 (17 C.F.R. § 240.10b-5).

20. In or around January 2012, Plaintiff received yet another spotless review. At that review, Plaintiff expressed concern that he had been given limited technical and staff resources to perform his research. Mr. Schumacher responded that he was aware of those limitations, and stated, in words or effect, that Plaintiff should write "what the business line wanted" irrespective of the resources available.

21. Shortly after his review, Plaintiff asked Mr. Cohen to share the cost of a new data feed from Mr. Cohen's departmental budget. Mr. Cohen responded that he would agree to share that cost, so long as various members of the trading desk and loan originations also had access to the new service so as to "stay on message."

22. On February 6, 2012, Plaintiff was advised by Mike Schumacher and UBS Securities human resources staff that, despite his impeccable record, his employment was being terminated. He learned shortly thereafter that his immediate superiors had appealed to Mr. Cohen personally and to members of his team to retain Plaintiff, given his importance to the business and his stellar record. According to Mr. Schumacher, Mr. Cohen refused that appeal.

## AS AND FOR A FIRST CAUSE OF ACTION

23. Plaintiff repeats and realleges the allegations in paragraphs 1 to 22 as if fully set forth herein.

24. Defendants have violated 15 U.S.C. § 78u-6(h)(1) because their decision to terminate Plaintiff's employment was motivated, in part, by his making disclosures that are protected by Section 806 of the Sarbanes Oxley Act (18 U.S.C. § 1514A).

25. Defendant UBS AG is covered by the Sarbanes Oxley Act because, upon information and belief, it (a) has "a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l)"; and (b) it "is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o (d))" 18 U.S.C. § 1514A (a).

26. Defendant UBS Securities is covered by the Sarbanes Oxley Act because, upon information and belief it has "a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l)." 18 U.S.C. § 1514A (a). Defendant UBS Securities is also covered by the Sarbanes Oxley Act because it is an affiliate of UBS AG, which is covered by 18 U.S.C. § 1514A, for the reasons set forth in paragraph 25 above.

27. Plaintiff engaged in activity that is protected by Section 806 of the Sarbanes Oxley Act (18 U.S.C. § 1514A) when he informed his supervisors at UBS Securities about conduct that he reasonably believed violated "provision[s] of Federal law relating to fraud against shareholders," including, but not limited to, SEC Rule 10b-5 (17 C.F.R. § 240.10b-5), which prohibits UBS Securities from making false statements or engaging in deceptive practices in connection with the sale of securities. 18 U.S.C. § 1514A (a)(1)(C).

28. Approximately two months after Plaintiff informed his supervisors about this conduct, UBS Securities terminated his employment. Defendants have violated 15 U.S.C. § 78u-6(h)(1)(A) because Plaintiff's protected activity was a contributing factor in their decision to terminate his employment.

**WHEREFORE** Plaintiff seeks judgment against Defendants:

A. Reinstating Plaintiff to his position at UBS Securities with the same seniority status that he would have had but for the discrimination and retaliation;

      B.      Awarding Plaintiff two times the amount of back pay he is owed, with interest;

      C.      Compensating Plaintiff for litigation costs, including expert witness fees, and reasonable attorney fees; and

      D.      Granting such other and further relief as the Court deems appropriate

Dated: August 2, 2012
      New York, New York

                          Respectfully submitted,

                          BROACH & STULBERG, LLP

                          By: _____
                               Robert B. Stulberg
                        Counsel for Plaintiff
                        One Penn Plaza, Suite 2016
                        New York, New York 10119
                        (212) 268-1000