UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
TREVOR MURRAY,

                Plaintiff,

      -v-

UBS SECURITIES, LLC and UBS AG,

                Defendants.
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/21/2013

12 Civ. 5914 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

      Plaintiff Trevor Murray brings this action against his former employer, UBS Securities, LLC and its parent company UBS AG (collectively "UBS"), pursuant to the Securities Whistleblower Incentives and Protection provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, 15 U.S.C. § 78u-6(h) (the "Dodd-Frank Act" or the "Act"). In his Complaint, Plaintiff alleges that UBS violated the whistleblower protection provisions of the Dodd-Frank Act because the "decision to terminate Plaintiff's employment was motivated, in part, by his making disclosures that are protected by Section 806 of the Sarbanes Oxley Act (18 U.S.C. § 1514A)." (Compl. ¶ 24). Defendants now move to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiff did not allege that he made a report to the Securities and Exchange Commission ("SEC" or "the Commission"), and therefore is not a "whistleblower" under the Act. (Docket No. 13). For the reasons stated below, Defendants' motion to dismiss is DENIED.

## BACKGROUND

      On a motion to dismiss, a court may consider facts stated in the complaint, documents attached to the complaint, and documents incorporated by reference into the complaint. *See, e.g.*,

*Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).  Accordingly, the following facts are taken from the Complaint and from documents attached to and referenced therein, and are assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Defendant UBS AG is a Switzerland corporation that conducts business in New York.  (Compl. ¶ 6).  UBS AG is required to file reports with the SEC under Section 15(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(d) (the "1934 Act"), and it has a class of securities that must be registered pursuant to Section 12 of the 1934 Act, 15 U.S.C. § 78l.  (*Id.*).  Defendant UBS Securities LLC, a Delaware corporation and a wholly owned subsidiary of UBS AG, is registered with the SEC as a broker-dealer and has a class of securities that must be registered pursuant to Section 12 of the 1934 Act, 15 U.S.C. § 78l.  (*Id.* ¶ 7).  From May 2011 until February 2012, Plaintiff worked for UBS as a Senior Commercial Mortgage-Backed Security ("CMBS") Strategist.  (*Id.* ¶¶ 5, 11).  In this capacity, he was responsible for performing research and creating reports about UBS's CMBS products that were distributed to UBS's current and potential clients.  (*Id.* ¶ 12).  According to the Complaint, Plaintiff received nothing but positive performance reviews during his tenure in this position.  (*Id.*).

In his Complaint, Plaintiff alleges that UBS engaged in a "concerted, extended effort" to "influence [him] to skew his published research in ways designed to support UBS Securities' ongoing CMBS trading and loan origination activities."  (*Id.* ¶ 13).  In particular, the Complaint avers that Ken Cohen, who was in charge of UBS Securities' CMBS trading and commercial mortgage originations, led efforts to pressure Plaintiff to craft his reports to be "more favorable" to UBS and to protect UBS's exposure.  The Complaint describes a number of encounters between Plaintiff and UBS personnel with responsibility for CMBS trading who allegedly told

2

Plaintiff that they "disagreed with [his] research," instructed him "not to publish anything negative," and to "write what the business line wanted." (*Id.* ¶¶ 14-16, 20).

Plaintiff believed that he was being pressured by his supervisors to produce purportedly objective research reports about security products that were false or misleading and intended to favor UBS's products and trading positions, in violation of federal laws. (*Id.* ¶ 19). Plaintiff repeatedly told his superiors at UBS about these attempts to influence his published research. (*Id.* ¶ 18). Specifically, the Complaint alleges that in December 2011 and January 2012, Plaintiff told his manager, Mike Schumacher, about these efforts to influence his research, including Cohen's remarks that Plaintiff's published articles were "too bearish" and were "off message" with the strategy of the CMBS trading desk and overall commercial mortgage group. (*Id.*). In January 2012, Plaintiff told Jeff Ho, a Managing Director at UBS, that Cohen only interacted with Plaintiff in order to criticize his research and attempt to manipulate his reports. (*Id.*). After his January 2012 performance review, Murray told Schumacher that he had been given limited resources to perform his research; Schumacher replied that he was aware of those limitations and that Murray should write "what the business line wanted," irrespective of the resources available. (*Id.* ¶ 20). On February 6, 2012, Plaintiff was fired from his position at UBS. (*Id.* ¶ 22).

## DISCUSSION

As noted, Plaintiff brings this suit pursuant to the Securities Whistleblower Incentives and Protection provisions of the Dodd-Frank Act. Specifically, Plaintiff alleges that Defendants violated Section 78u-6(h)(1)(A) of the Act, which provides that

> [n]o employer may discharge, demote, suspend, threaten, harass, directly or indirectly, or in any other manner discriminate against, a whistleblower in the terms and conditions of employment because of any lawful act done by the whistleblower —

3

> (i) in providing information to the Commission in accordance with this section;
>
> (ii) in initiating, testifying in, or assisting in any investigation or judicial or administrative action of the Commission based upon or related to such information; or
>
> (iii) in making disclosures that are required or protected under the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7201 *et seq.*), the Securities Exchange Act of 1934 (15 U.S.C. 78a *et seq.*), including section 10A(m) of such Act (15 U.S.C. 78f(m)), section 1513(e) of Title 18, and any other law, rule, or regulation subject to the jurisdiction of the Commission.

15 U.S.C. § 78u-6(h)(1)(A); *see id.* § 78u-6(h)(1)(B)(i) (providing a private right of action for an individual "who alleges discharge or other discrimination in violation of subparagraph (A)").

At first glance, Plaintiff's claim would appear to fall squarely within the terms of this provision. After all, the Sarbanes-Oxley Act protects individuals who disclose information that they reasonably believe constitutes a violation of SEC rules or regulations, when the information is provided to, among others, "a person with supervisory authority over the employer (or such other person working for the employer who has the authority to investigate, discover, or terminate misconduct)." 18 U.S.C. § 1514A(a)(1)(C). And here, Plaintiff alleges that Defendants fired him in retaliation for doing just that — that is, for complaining to his supervisors that he was being pressured to produce false and misleading research reports about UBS's securities products in violation of the SEC rules or regulations. (Compl. ¶¶ 13-15, 20).

By its terms, however, Section 78u-6(h)(1)(A) prohibits an employer from taking the prescribed actions against a "whistleblower." And, as Defendants point out, the Dodd-Frank Act defines "whistleblower," in relevant part, as "any individual who provides . . . information relating to a violation of the securities laws *to the Commission*, in a manner established, by rule or regulation, by the Commission." 15 U.S.C. § 78u-6(a)(6) (emphasis added). Relying on this

provision, Defendants contend that Section 78u-6(h)(1)(A) applies exclusively to someone who provided information to the SEC, a category that would appear to exclude Plaintiff as he provided information only to UBS supervisors.  (Defs.' Mem. Law Supp. Mot. Dismiss 2). Plaintiff, by contrast, argues that Section 78u-6(h)(1)(A)(iii) establishes a narrow exception to Section 78u-6(a)(6)'s definition of "whistleblower," and protects an employee who makes any of that provision's enumerated disclosures, including disclosures that are "required or protected under the Sarbanes-Oxley Act."  (Pl.'s Mem. Law Opp'n Mot. Dismiss 1-2).

Significantly, in assessing who is right, the Court does not write on a blank slate.  First, four other district court judges have confronted this exact issue, and each one has endorsed Plaintiff's reading of the statute.  *See Genberg v. Porter*, No. 11 Civ. 2434 (WYD) (MEH), 2013 WL 1222056, at *10 (D. Colo. Mar. 25, 2013); *Kramer v. Trans-lux Corp.*, No. 11 Civ. 1424 (SRU), 2012 WL 4444820, at *3-5 (D. Conn. Sept. 25, 2012); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 993-95 (M.D. Tenn. 2012); *Egan v. Tradingscreen, Inc.*, No. 10 Civ. 8202 (LBS), 2011 WL 1672066, at *5 (S.D.N.Y. May 4, 2011).[1]  Second, on August 12, 2011, the SEC — to whom Congress delegated authority to administer the whistleblower provisions of Dodd-Frank, *see* 15 U.S.C. § 78u-6(i) — promulgated a final rule regarding the relationship between Section 78u-6(h)(1)(A), the anti-retaliation provision, and Section 78u-6(a)(6), the provision defining "whistleblower."  The SEC's rule provides:

(b) Prohibition against retaliation:

---

[1] The parties dispute whether the relevant analyses in these decisions are dicta. (*Compare* Defs.' Mem. Law Supp. Mot. Dismiss 2, 5-7, *with* Pl.'s Mem. Law Opp'n Mot. Dismiss 12-14). The Court need not resolve that dispute, however, as the decisions are not binding on this Court regardless of whether the relevant analyses are dicta.  In any event, even if dicta, the relevant analyses are certainly well-considered dicta.

>    (1) For purposes of the anti-retaliation protections afforded by Section 21F(h)(1) of the Exchange Act (15 U.S.C. 78u–6(h)(1)), you are a whistleblower if:
>
>    (i) You possess a reasonable belief that the information you are providing relates to a possible securities law violation (or, where applicable, to a possible violation of the provisions set forth in 18 U.S.C. 1514A(a)) that has occurred, is ongoing, or is about to occur, and;
>
>    (ii) You provide that information in a manner described in Section 21F(h)(1)(A) of the Exchange Act (15 U.S.C. 78u–6(h)(1)(A)).
>
>    (iii) The anti-retaliation protections apply whether or not you satisfy the requirements, procedures and conditions to qualify for an award.

17 C.F.R. § 240.21F-2(b)(1).  In its comments to the rule, the SEC explained further that "[t]he second prong of the Rule 21F-2(b)(1) standard provides that, for purposes of the anti-retaliation protections, an individual must provide the information in a manner described in Section 21F(h)(1)(A).  This change to the rule reflects the fact that the statutory anti-retaliation protections apply to three different categories of whistleblowers, *and the third category includes individuals who report to persons or governmental authorities other than the Commission*." SEC Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300-01, at *34304, 2011 WL 2293084 (2011) ("Comments to Final Rule") (emphasis added); *see also id.* (noting that Section 21F(h)(1)(A)(iii)'s incorporation of Section 806 of the Sarbanes Oxley Act "provides anti-retaliation protections for employees of public companies, . . . when these employees report to (i) [a] Federal regulatory or law enforcement agency, (ii) any member of Congress or committee of Congress, or (iii) a person with supervisory authority over the employee or such other person working for the employer who has authority to investigate, discover, or terminate misconduct").

On the SEC's view of the Act, therefore, the anti-retaliation provision's protections extend to those who make disclosures that are protected under the Sarbanes-Oxley Act, whether or not the disclosures were made to the SEC itself. The question thus arises whether the SEC's interpretation warrants deference under the familiar two-step inquiry of *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). At step one of that inquiry, the Court must ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue," the Court proceeds to step two, asking "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. A court may not defer to an interpretation that is "arbitrary, capricious, or manifestly contrary to the statute." *Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) (internal quotation marks omitted). But "[i]f the agency interpretation is reasonable, then [a court] must defer to it." *Id.* (internal quotation marks omitted). This framework "is rooted in a background presumption of congressional intent" and "provides a stable background rule against which Congress can legislate: Statutory ambiguities will be resolved, within the bounds of reasonable interpretation, not by the courts but by the administering agency." *City of Arlington, Tex. v. FCC*, No. 11-1545, — S. Ct. —, 2013 WL 2149789, slip op. at 5 (May 20, 2013).

Applying this analysis here, the Court concludes that deference to the SEC's rule is warranted. In assessing whether a statute is ambiguous at the first step, a court must "employ[] traditional tools of statutory construction," *Chevron*, 467 U.S. at 842, 843 n.9, which calls for considering statutory language in context. That is, "'[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that

language is used, and the broader context of the statute as a whole.'" *Virgilio v. City of N.Y.*, 407 F.3d 105, 112 (2d Cir. 2005) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).  Words should be given their "ordinary sense," *Natural Res. Def. Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001), and "the meaning of statutory language, plain or not, depends on context," *Bailey v. United States*, 516 U.S. 137, 145 (1995) (internal quotation marks and alteration omitted); *see also Muszynski*, 268 F.3d at 98 ("[W]hen determining which reasonable meaning should prevail, the text should be placed in the context of the entire statutory structure.").

Here, the ambiguity arises from the tension between Section 78u-6(a)(6), which limits the definition of "whistleblower" to one who makes a disclosure to the SEC, and Section 78u-6(h)(1)(A)(iii), which contemplates a broader scope of protection.  Defendants proffer one way of reconciling the two provisions, pursuant to which Section 78u-6(a)(6) identifies *who* is protected, while Section 78u-6(h)(1)(A)(iii) identifies *what* they are protected for doing.  (Defs.' Mem. Law Supp. Mot. Dismiss 8-9; Defs.' Supp. Mem. Law 2).  That is, according to Defendants, the protections of Section 78u-6(h)(1)(A) come into play only after a person reports information to the SEC, at which point that person is protected from retaliation not only for the report to the SEC, but also for "other steps such a 'whistleblower' might take to further compliance with the law."  (Defs.' Mem. Law Supp. Mot. Dismiss 9).

No doubt this reading of the two statutory provisions is permissible, but as *Egan*, *Nollner*, *Kramer*, and *Genberg* make clear, it is by no means mandatory.  Instead, as Judge Sand explained in *Egan*, Section 78u-6(h)(1)(A)(iii) may also be viewed "as a narrow exception to [Section] 78u–6(a)(6)'s definition of a whistleblower as one who reports to the SEC."  2011 WL 1672066, at *5.  On this view of the two provisions, to state a claim under Section 78u-

6(h)(1)(A), a plaintiff "must *either* allege that his information was reported to the SEC, *or* that his disclosures fell under the four categories of disclosures delineated by [Section] 78u-6(h)(1)(A)(iii) that do not require such reporting: those under the Sarbanes-Oxley Act, the Securities Exchange Act, 18 U.S.C. § 1513(e), or other laws and regulations subject to the jurisdiction of the SEC." *Id.* (emphasis added).

The existence of these "competing, plausible interpretations" of the statutory provisions compels the conclusion that "the statutory text is ambiguous in conveying Congress's intent." *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 120 (2d Cir. 2007); *see, e.g.*, *PDK Labs. Inc. v. U.S. DEA*, 362 F.3d 786, 796 (D.C. Cir. 2004) (explaining that simply because a statute "is susceptible of one construction does not render its meaning plain if it is also susceptible of another, plausible construction"); *see also, e.g.*, *Kramer*, 2012 WL 4444820, at *4 (concluding that it is "not . . . unambiguously clear that the Dodd-Frank Act's retaliation provision only applies to those individuals who have provided information relating to a securities violation to the Commission, and have done so in a manner established by the Commission"). It also compels the conclusion, at step two of the *Chevron* inquiry, that the SEC's interpretation is a reasonable one. After all, its rule is consistent with the interpretation of the statutory provisions put forth by *Egan*, *Nollner*, *Kramer*, and *Genberg*: that Section 78u-6(h)(1)(A)(iii) provides a narrow exception to Section 78u-6(a)(6)'s definition of a whistleblower as one who reports to the SEC, and protects internal disclosures protected by the Sarbanes-Oxley Act and the 1934 Act.

This interpretation comports with a cardinal principle of statutory construction that a "statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (internal quotation mark omitted). As the Court in *Egan* explained, Defendants'

9

preferred "reading of the definition of the term 'whistleblower' in 15 U.S.C. § 78u-6(a)(6) . . . would effectively invalidate § 78u-6(h)(1)(A)(iii)'s protection of whistleblower disclosures that do not require reporting to the SEC." *Egan*, 2011 WL 1672066, at *4; *see also Nollner*, 852 F. Supp. 2d at 994 (explaining that under "traditional principles of statutory construction," the court "must read part (iii) of the anti-retaliation provisions in conjunction with the definition of whistleblower").

Defendants claim that this interpretation "disrupt[s] the carefully-constructed anti-retaliation program established by Sarbanes-Oxley," by providing a longer statute of limitations and providing "more generous" protections that Congress intended.  (Defs.' Mem. Law Supp. Mot. Dismiss 9-10).  But as the Court explained in *Kramer*, considering the congressional intent to expand on the protections of Sarbanes-Oxley, "the claimed [statute of limitations] problem is no problem at all."  *Kramer*, 2012 WL 4444820, at *5.  Relying on D.C. Circuit precedent, Defendants also argue that the Court should not defer to the SEC's interpretation because *Chevron* deference is appropriate only when an agency recognizes that Congress's intent is not plain from the statute's face.  (Defs.' Reply Mem. Law Supp. Mot. Dismiss 9-10 (citing, *inter alia*, *Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1354 (D.C. Cir. 2006); *Arizona v. Thompson*, 281 F.3d 248, 254 (D.C. Cir. 2002))).  Here, Defendants argue, the SEC did not purport to resolve a statutory ambiguity, but rather believed there was a "clear statutory command" that "Dodd-Frank's anti-retaliatory provision 'expressly protect[ts]' internal whistleblowing."  (*Id.* (quoting Securities and Exchange Commission, Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, at *34304 n. 38 (June 13, 2011))).

The Second Circuit has not yet addressed the question of whether deference is "only appropriate when the agency has exercised its *own* judgment, not when it believes that [its]

interpretation is compelled by Congress." *Thompson*, 281 F.3d at 254 (internal quotation mark omitted).  In the circumstances of this case, however, the Court need not reach the issue, as the SEC did purport to resolve a statutory ambiguity — namely, the interplay between Section 78u-6(h)(1)(A), the anti-retaliation provision, and Section 78u-6(a)(6), the provision defining "whistleblower."  To be sure, the SEC explained that "in a few limited situations . . . internal reporting is expressly protected."  Comments to Final Rule, 2011 WL 2293084, at *34304 n.38.  But that does not mean that the SEC considered the statute unambiguous.  As the D.C. Circuit recently held, "it would be a stretch, to say the least, to hold that [an agency's] use of the word 'clear' demonstrates that the agency meant to suggest that its regulatory interpretation was 'compelled by Congress.'"  *Ass'n of Private Sector Coll. and Univs. v. Duncan*, 681 F.3d 427, 445 (D.C. Cir. 2012) (quoting *Peter Pan*, 471 F.3d at 1354).  The same logic applies to the SEC's use of the word "expressly" here.

Moreover, it is apparent that the SEC considered the policy issues involved and exercised judgment in formulating its final rule.  As the *Egan* Court noted, the SEC's proposed regulation, introduced on November 3, 2010, focused only on the bounty award provisions of the Act (pursuant to which whistleblowers who report violations of the securities laws to the SEC may receive portions of any money recovered by the SEC) rather than the anti-retaliatory provisions at issue in this case.  *See* Proposed Rules for Implementing the Whistleblower Provisions of Section 21F of the Securities and Exchange Act of 1934, 75 Fed. Reg. 70488 (proposed Nov. 17, 2010) (to be codified at 17 C.F.R. pts. 240, 244); *see also Egan*, 2011 WL 1672066, at *8 (finding that no deference was owed to the SEC's interpretation of Dodd-Frank because the "agency here has not spoken on the precise question involved in this case" and instead only interpreted the Act's bounty award provisions).  After receiving comments on its proposed rule,

the SEC promulgated its final rule.  In the comments to that rule, it explained: "[W]e have carefully considered the comments received on the proposed rules in fashioning the final rules we adopt today.  We have made a number of revisions and refinements to the proposed rules.  Taken together, we believe these changes will better achieve the goals of the statutory whistleblower program and advance effective enforcement of the Federal securities laws."  Comments to Final Rule, 2011 WL 2293084, at *34300.

More specifically, the SEC explained that between the proposed rule and the final rule, it had "modified proposed Rule 21F-2(b)'s anti-retaliation protections, which are now in Rule 21F-2(b)(1) . . . .  The second prong of the Rule 21F-2(b)(1) standard provides that, for purposes of the anti-retaliation protections, an individual must provide the information in a manner described in Section 21F(h)(1)(A).  This change to the rule reflects the fact that the statutory anti-retaliation protections apply to three different categories of whistleblowers, and the third category includes individuals who report to persons or governmental authorities other than the Commission."  *Id.* at *34303-04.  Accordingly, while the *proposed* rule did not speak to the "question at issue" here, *see Egan*, 2011 WL 1672066, at *8, the *final* rule did, offering an interpretation of Sections 78u-6(h)(1)(A) and 78u-6(a)(6) under which internal disclosures are protected.  Put simply, it is unlikely that the SEC would have made these "revisions and refinements to the proposed rules" if it believed that this interpretation was "compelled by Congress."

In short, because the SEC's rule clarifies an ambiguous statutory scheme the SEC was charged with enforcing and reflects the considerable experience and expertise that the agency has acquired over time with respect to interpretation and enforcement of the securities laws, this Court defers to the SEC's interpretation.  Under its rule, the anti-retaliation whistleblower protection provisions of Dodd-Frank require Plaintiff to show that he either provided information

to the SEC *or* that his disclosures fell under the four categories listed in Section 78u-6(h)(1)(A)(iii).  As Plaintiff has indisputably alleged that Defendants' decision to terminate him was motivated, in part, by his making disclosures that are protected by Section 806 of the Sarbanes Oxley Act, 18 U.S.C. § 1514A (Compl. ¶ 24), he has plausibly stated a claim under Section 78u-6(h)(1)(A)(iii).

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Docket No. 13) is DENIED.  The Clerk of Court is directed to terminate the aforementioned motion.

SO ORDERED.

Dated: May 21, 2013
       New York, New York

_____
JESSE M. FURMAN
United States District Judge